1998-NMCA-015

953 P.2d 294

**James L. COX, and Intha N. Cox, Richard L. Cox and Peggy L. Cox, Petitioners–Appellees,**

v.

**Karen L. HANLEN and Curtis Hanlen, Respondents–Appellants.**

**No. 17594.**

Court of Appeals of New Mexico.

Nov. 10, 1997.

Certiorari Denied Jan. 15, 1998.

Anthony J. Williams, Los Lunas, for Petitioners–Appellees.

Karen L. Hanlen, Bosque Farms, Pro se Respondent–Appellant.

## OPINION

**WECHSLER, Judge.**

1. In this dispute between adjoining property owners concerning an irrigation ditch, Defendants, Karen and Curtis Hanlen (Hanlens), appeal from the district court's judgment and order which recognized an irrigation ditch easement in favor of Plaintiffs, James L. and Intha N. Cox and Richard L. and Peggy L. Cox (all of whom are referred to as the Cox family) through the Hanlens' property. In addition, the district court required the Hanlens to take various actions to cease interfering with the Cox family's use of the ditch. We address, among other issues, whether the alterations which the Hanlens made to the ditch affect the rights of the Cox family under NMSA 1978, Section 73–2–5 (1933, as amended in 1941). We affirm in part and reverse in part.

### I. Factual Background

2. Under a share-lease program operated by the Farm Security Administration, a division of the United States Department of Agriculture, Newt H. and Mary Cox, the parents of James L. Cox, farmed a large tract of real property located in Bosque Farms beginning sometime in the 1930s. They acquired the property from the United States on January 1, 1944. The property currently consists of the property of Richard L. Cox and Peggy L. Cox, the property of James L. Cox and Intha N. Cox (both properties referred to herein as the "Cox farm"), and Mary Acres, a subdivision created by Newt H. and Mary Cox in the mid 1960s. The Hanlens purchased Lot 1 Unit 1 in Mary Acres in June 1994.

3. The Cox farm and Mary Acres share a common boundary; the Cox farm on the north and the subdivision on the south. An irrigation ditch runs along the north boundary of Mary Acres to irrigate a portion of the Cox farm. That portion of the Cox farm is owned in part by James and Intha Cox and in part by Richard and Peggy Cox. The ditch ends within the Hanlens' lot where water is released to the Cox farm.

4. The ditch is fenced on the north by the Cox farm. To the south, until early 1995, the Hanlens and the other lot owners in Mary Acres abutting the ditch built their own fences at least ten feet south of the Cox farm boundary fence as shown on the David Tibbetts survey of May 8, 1995. After the Hanlens acquired their property, they made certain modifications to the ditch and the surrounding area. First, they built a new pipe fence on the south berm of the ditch to the north of the then existing fence, narrowing the lane for the ditch on their property. Later, while this case was pending in district court, the Hanlens placed culverts and water gates in the ditch and disturbed the south berm of the ditch.

### II. The Ditch Easement of Section 73–2–5

5. An easement is "a liberty, privilege, right, or advantage which one has in the land of another." *Kennedy v. Bond,* 80 N.M. 734, 736, 460 P.2d 809, 811 (1969). In an irrigation ditch easement, the ditch structure, the property of the servient estate, is used to flow water for the benefit of the owner of the easement rather than for the ditch property owner's interests. *See Olson v. H & B Properties, Inc.,* 118 N.M. 495, 498, 882 P.2d 536, 539 (1994) (ditch easement consists of right of dominant estate for water flow through ditch structure which is property of and located on servient estate); *Posey v. Dove,* 57 N.M. 200, 212–13, 257 P.2d 541, 549 (1953). As a result, a natural tension exists concerning the degree to which the dominant owner may utilize the servient estate.

6. The purpose of Section 73–2–5 is to reduce this tension. As originally adopted in 1933, Section 73–2–5 provided:

> Hereafter in all cases where there has been a continuous use of a ditch for the purposes of irrigation, for five years, it shall be conclusively presumed as between the parties, that a grant has been made by the owners of the land, upon which such ditch is located, for the use of the same.

1933 N.M.Laws, ch. 65, § 1. The following provision permitting the owner of a servient

estate to make alterations or changes was added by amendment in 1941:

> provided that nothing herein contained shall be construed to prevent the owner of a servient estate from making any alterations, or changes in the location, of any ditch upon his land, so long as such alteration or change of location shall not interfere with the use of such ditch by the owner, or owners, of the dominant estate or estates.

1941 N.M.Laws, ch. 155, § 1.

7. The original 1933 enactment creates a conclusive presumption of an easement as the result of five years of continuous use of a ditch for irrigation purposes. With the 1941 amendment, Section 73–2–5 permits the landowner to use the ditch land so long as the landowner's use does not interfere with the dominant estate's use of the ditch.

### A. Applicability of the Original 1933 Language of Section 73–2–5

■ 8. The district court found that the ditch is part of the original irrigation system of the original settlement of Bosque Farms and has existed and been in continuous use since the 1930s. It applied the original 1933 language of Section 73–2–5 to conclude that the Hanlens, as servient estate owners, had no right to make any alterations whatsoever to the ditch because the ditch was established prior to the 1941 amendment. We do not agree with this statutory interpretation.

■ 9. When construing a statute, this Court will read the statute as a whole, construing each part in connection with the other parts to give effect to all provisions of the statute in a consistent manner. *See State v. Sinyard*, 100 N.M. 694, 696–97, 675 P.2d 426, 428–29 (Ct.App.1983). Under the 1933 provision, when a ditch has been used continuously for irrigation for five years, it is conclusively presumed that the owners of the ditch land have granted the land for the ditch use. However, the provision establishes this conclusive presumption "as between the parties." In the case on appeal, during the 1930s, and until 1964, when the Mary Acres Subdivision was created, the Cox family owned or had possession of all the real prop-

erty in question including the ditch; there were no other persons with ownership or rights to exert with respect to the ditch.

■ 10. The intent of the 1933 statute, which was carried into the 1941 amendment, was to limit disputes between dominant and servient ditch easement estates. If the owner of the ditch land had for five years permitted the continuous use of the land for the purposes of a ditch, the landowner of the servient estate could not be heard to complain that the landowner's land could not be used for the ditch. To give effect to this legislative intent, and to the clause "as between the parties," the five-year term of Section 73–2–5 must be applied after the creation of a relationship between parties with different rights to a ditch rather than the creation of the ditch itself.

11. *Archibeck v. Mongiello*, 58 N.M. 749, 276 P.2d 736 (1954), relied on by the district court, does not hold differently in that during the period of continuous use of the ditch in *Archibeck*, including five years following the 1933 enactment, there were adverse interests in the ditch land; it was owned by the appellees or their predecessors in title and used by the appellant. *Id.* at 751–53, 276 P.2d at 737–38. In the case on appeal, as multiple interests did not exist when the ditch originated, Section 73–2–5 did not begin to apply until 1964 when the Cox family created additional interests to the ditch property by establishing the Mary Acres Subdivision. As the 1941 amendment was then in effect, it is applicable to the current dispute.

### B. Application of 1941 Amendment of Section 73–2–5

■ 12. The tension that has arisen in this case concerns the maintenance of the easement. The Cox family members assert that they wish to continue to maintain the ditch by running a tractor pulling a "V" ditch-cleaning implement through the ditch lane as they have in the past. They claim that the Hanlens have interfered with their maintenance of the ditch because the Hanlens' new fence does not permit the ditch lane to accommodate the tractor, because the Hanlens have disturbed the south berm of the ditch, impairing its integrity, and because

the Hanlens' new culverts and water gates affect the ditch maintenance. The Hanlens, on the other hand, contend that the 1941 amendment to Section 73–2–5 covers the Cox family's "use," not "maintenance" of the ditch, that their fence does not interfere with the Cox family's maintenance of the ditch as it does not impede the water flow, and that they as the servient estate owners possess the exclusive right to make decisions about the portion of the ditch structure located on their property as long as they do not deprive the dominant estate of water flow through the ditch.

13. We first consider the issue of whether the maintenance the Cox family wishes to perform is included in Section 73–2–5 as part of the Cox family's use of the ditch. If it is, we must then address whether the Hanlens unreasonably interfered with the Cox family's right to use and maintain the ditch easement.

14. The district court concluded that the conclusive presumption of Section 73–2–5 gave rise to a ditch easement on the basis of continuous use. The parties do not dispute that the ditch has been in continuous use for more than five years since 1964. A statutory easement created by the conclusive presumption of Section 73–2–5 does not necessarily fit into a particular category of easement origination. *See* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land*, ¶¶ 3.01–6.04 (rev. ed.1995) (easements created generally by express provision, implication, prescription, and other means). We view it as being similar to a prescriptive easement in that it comes about with the continuous use by one other than the ditch landowner. *See Cunningham v. Otero County Elec. Coop.*, 114 N.M. 739, 742, 845 P.2d 833, 836 (Ct.App.1992) (prescriptive easement proved by evidence of open, uninterrupted, peaceable, notorious, adverse use under claim of right for prescriptive period with the owner's constructive or actual knowledge).

15. One entitled to a prescriptive easement is "privileged to do such acts as are necessary to render it possible to make the use authorized by the easement" as well as continue the acts "done during the prescrip-

tive period." Restatement of Property (Servitudes) § 480 cmt. a (1944). Under this analysis, the Cox family has the privilege to maintain and repair the ditch. The privilege arises from, and is part of, the Cox family's use and maintenance of the ditch during the five-year statutory period. Indeed, without the ability to maintain, the value of an easement can be severely diminished as the owner of the servient estate's interests may be different from or contrary to those of the owner of the dominant estate, and, therefore, the owner of the dominant estate cannot rely on the interests or abilities of the owner of servient estate to care for the easement. The dominant estate owner's actions in exercising this privilege, however, must be reasonable. Even if the easement holder has performed certain actions during the prescriptive period, the passage of time may later mandate the use of different, more modern methods to accomplish the same purpose. *See generally* Restatement, *supra*, § 481 cmt. a. The easement privilege, in addition, is subject to the obligation of the owners of both the dominant and servient estates not to unreasonably interfere with the use of the land by the other. *See id.*

16. We note that the Hanlens contend that the ditch easement, rather than being created by Section 73–2–5, originated by a written document reserving the ditch easement rights to the Cox family. As we later discuss, the district court rejected this contention based upon substantial evidence. Regardless, an analysis of the easement as originating by conveyance leads to the same result. *See* Bruce & Ely, *supra*, ¶ 8.07 [1]; Restatement, *supra*, § 485 cmt. b; 2 *American Law of Property* §§ 8.66, 8.70 (A. James Casner, ed., 1952). The owner of the dominant estate created by express provision has the right to reasonably enter the servient estate to repair and maintain the right of way and remove natural obstructions interfering with its use. *See Dyer v. Compere*, 41 N.M. 716, 720, 73 P.2d 1356, 1359 (1937).

C. *Reasonable Maintenance of Easement*

17. Applying Section 73–2–5, reasonable maintenance decisions are necessary to the Cox family's use of the ditch easement.

If the use of a tractor and "V" ditch-cleaning implement constitute reasonable maintenance, Section 73-2-5 does not permit the Hanlens to unreasonably interfere with its use. Whether this maintenance is reasonable and whether the Hanlens have unreasonably interfered with the Cox family's maintenance are factual questions which this Court reviews to determine whether substantial evidence exists to support the district court rulings. *See Strata Prod. Co. v. Mercury Exploration Co.*, 1996 NMSC 016, 121 N.M. 622, 627, 916 P.2d 822, 827 ("On appeal we will not disturb the trial court's factual findings unless the findings are not supported by substantial evidence.").

18. With regard to the evidence of reasonableness, James Cox testified that he had maintained the ditch with a tractor which straddled the ditch pulling a cleaning implement which cleaned the bottom of the ditch, shaped and built up the ditch, and, with the tractor, compacted the berms. He also testified as to the necessity to drive the tractor and cleaning implement the length of the ditch because it was dangerous to enter the ditch from the side.

19. The Hanlens do not attack the Cox family's maintenance methods as not being up-to-date. To the contrary, they contend that the ditch can be maintained by hand. However, Frank C. Holguin, the Sandoval County Agricultural Extension Agent, testified that ditches were not maintained by manual labor in the area and to do so would not be as efficient as mechanical maintenance. The testimony of Mr. Cox and Mr. Holguin was substantial evidence upon which the district court could conclude that the maintenance activities of the Cox family were reasonable. *See Herrera v. Roman Catholic Church*, 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991) (findings assumed that are reasonably necessary to support the decision).

### D. *Interference with Maintenance*

20. The 1941 legislative amendment to Section 73-2-5 expressly permits the owner of a servient estate to make "alterations, or changes in the location, of any ditch upon his land, so long as such alteration or change of location" does not interfere with

the use of the ditch by the owners of the dominant estate or estates. *See also* Restatement, *supra,* § 481 ("The possessor of land subject to an easement created by prescription is privileged, as against the owner of the easement, to make such uses of the servient tenement as are not incompatible with the use authorized by the easement.").

21. In view of the fact that the statute permits the servient landowner to make alterations or changes in the ditch, we turn, therefore, to whether the modifications made by the Hanlens to the ditch and its surrounding area unreasonably interfere with the right of the Cox family to reasonably maintain the ditch. In this regard, Mr. Cox testified that the Hanlens' moving of the south berm of the ditch and construction of their fence made it impossible for him to enter the ditch with the tractor because of the narrow ditch lane. This testimony was sufficient to support the district court's conclusion that the Hanlens' construction of the fence and their narrowing of the ditch violated the 1941 amendment to Section 73-2-5. *See Herrera,* 112 N.M. at 721, 819 P.2d at 268. Therefore, the district court properly required the Hanlens to restore the ditch to its previous width, remove the interference of the Hanlens' fence, and enjoin such future modifications.

22. Other than with respect to the ditch width, on the record before us, we are unable to determine whether Section 73-2-5 requires as broad a remedy as the district court granted in this case. The district court ordered the Hanlens to restore the ditch to its condition at the time of their purchase of the property and enjoined the Hanlens from making any further modifications to the ditch.

23. Giving consideration to the servient estate owner's use of the property, Section 73-2-5 does not bar the servient estate owner from constructing culverts and water gates in the ditch which do not unreasonably interfere with the use of the dominant estate. Mr. Cox testified and the district court found that each of the Hanlens' alterations to the ditch—including moving the south berm, building the fence, and installing two culverts—impaired his ability to irrigate the

**536**

Cox pasture. Mr. Cox only pointed to a problem with the culvert on the Hanlen property, stating that he could not move his ditch-cleaning implement over the ditch entrance he previously used because the culvert rose above ground level. The fact that the top of the culvert rose several inches above ground level is not determinative of the Hanlens' right under Section 73–2–5 to install a culvert to permit travel across the ditch. The real issue is whether the installation of the culvert "unreasonably" interferes with the dominant estate owner's use or maintenance of the ditch. The district court did not address this issue. Accordingly, we remand to the district court to address the question of whether the culverts and water gates unreasonably interfere with the Cox family's Section 73–2–5 rights, and, if so, to take remedial action in accordance with Section 73–2–5.

### III. *Extent of the Easement*

24. The deeds from James L. and Intha N. Cox originally conveying the lots along the northern boundary of the Mary Acres Subdivision contain the following reservation: "Subject to zoning regulations, restrictions, Conservancy liens and easements and a 7 foot utility and ditch easement along the northern boundary". The Cox deed conveying the Hanlen lot, however, has no such reservation. The district court concluded that the reference in other deeds to the ditch and utility easement does not pertain to the Hanlen lot. Alternatively, the district court held that if the easement reference did pertain to the Hanlen lot, either (1) the reservation language is ambiguous, and extrinsic evidence indicated that the reference to seven feet related only to the rights of the electric utility, not the width of the ditch; or (2) even if the ditch easement were at one time limited to seven feet, the continuous use of the ditch beyond seven feet to the backyard fences of the Mary Acres Lots created additional irrigation ditch easement rights under Section 73–2–5. We conclude that these district court rulings are supported by substantial evidence.

25. The Hanlens claim that the ditch easement is only seven feet and that this width limitation applies to their property by virtue of the express reservation in other warranty deeds. They explain that an "agreement" for the creation of the Mary Acres Subdivision was executed by James and Intha Cox as owners, Walter W. and Estaline W. Nations as purchasers, and Mary Cox as mortgagee, that this "agreement" identified as "Exhibit A," stated specific easements and rights of way within the subdivision and was to have been recorded with the agreement, but that Exhibit A has never been located.

26. Although the Cox deeds to upstream Mary Acres Lots included the easement reservation, the conveyance to the Hanlens' lot did not. The district court did not accept the Hanlens' interpretation that the omitted language was intended to be in the Cox deed. The deed itself is substantial evidence to the contrary. The issue for this Court "is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached." *Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App. 1986). Moreover, the grant or reservation of an easement, a real property interest, is unenforceable unless one of the exceptions to the statute of frauds applies. *See Ritter–Walker Co. v. Bell,* 46 N.M. 125, 128, 123 P.2d 381, 382 (1942). To meet their burden in avoiding the statute of frauds, the Hanlens must prove an agreement by "'clear, cogent and convincing'" evidence. *Alvarez v. Alvarez,* 72 N.M. 336, 341, 383 P.2d 581, 584 (1963) (quoting *Paulos v. Janetakos,* 41 N.M. 534, 539, 72 P.2d 1, 4 (1937)). The existence of an agreement without proving its content does not meet this burden.

27. The district court couched its conclusion of law in response to the Hanlens' argument that, if the reference to the seven-foot ditch and utility easement limited the width of the ditch to seven feet at one time, the continuous use of the property of the Mary Acres Lots beyond the seven feet south of the Cox farm boundary fence created a grant of such property by the Mary Acres lot owners for the use of the ditch under Section 73–2–5. As we have discussed, the continuous use of the property for ditch purposes, including maintenance,

serves as substantial evidence for the district court's conclusion that the entire ditch lane from the Cox farm boundary fence to the pre-Hanlens backyard fences of the Mary Acres Lots has been granted by the subdivision property owners under Section 73-2-5.

28. There is also substantial evidence to uphold the district court's additional alternative conclusion that even if the seven-foot ditch and utility easement pertained to the Hanlen property, the language creating the reservation is ambiguous and that extrinsic evidence supported the conclusion that the seven-foot limitation did not pertain to the width of the ditch. When construing a deed, the court will seek to ascertain the intention of the parties "viewed in light of the surrounding circumstances." *Camino Sin Pasada Neighborhood Ass'n v. Rockstroh,* 119 N.M. 212, 214, 889 P.2d 247, 249 (Ct.App. 1994) To determine the true intent of the parties, the court may look at all the evidence, extending beyond the four corners of the deed. *See id.* at 215, 889 P.2d at 250; *see also Martinez v. Martinez,* 93 N.M. 673, 675, 604 P.2d 366, 368 (1979).

29. The district court did not err in going beyond the literal language of the deed in this case. Under the easement reservation, assuming that it is applicable, the Mary Acres Lots are "[s]ubject to ... a 7 foot utility and ditch easement...." The question of uncertainty stems from whether the seven-foot limitation applies to both the utility and ditch easements or only to use for utility purposes. James Cox testified that the modifying language concerning width was intended for the benefit of Public Service Company of New Mexico and that the ditch would not have worked with the same efficiency as it did at the time of the creation of Mary Acres if it were only seven feet wide. Significantly, until the Hanlens moved their back fence in 1995, all the subdivision property owners built their backyard fences to permit a ditch easement width greater than seven feet. Although the Hanlens presented evidence to the contrary, the district court's conclusion that the width limitation related only to the utility easement is based on substantial evidence. *See Hernandez,* 104 N.M. at 71, 716 P.2d at 649.

30. The Hanlens assert that because the Cox family seeks to establish a prescriptive easement, the Cox family has the burden of proving the elements of a prescriptive easement by clear and convincing evidence. *See Cunningham,* 114 N.M. at 742, 845 P.2d at 836. To the extent that Section 73-2-5 requires continuous use in that it is similar to a prescriptive easement, the Cox family presented such evidence. *See In re Termination of Parental Rights of Eventyr J.,* 120 N.M. 463, 466, 902 P.2d 1066, 1069 (Ct.App. 1995) (clear and convincing evidence instantly tilts scales in affirmative and factfinder's mind is left with abiding conviction).

31. The Hanlens further intimate that the Cox family should not prevail because James and Intha Cox are only lessees of Richard and Peggy Cox, the owners of the dominant estate. The fact that the owners of the dominant estate may lease the estate does not affect the result. A lessee's rights emanate from the lessor. However, the evidence was that the ditch irrigates a portion of the Cox farm owned by Richard and Peggy Cox.

32. Additionally, the Hanlens seek to distinguish between private and public ditches, claiming that Section 73-2-5 is inapplicable to a private ditch. We do not agree. We construe Section 73-2-5 in accordance with its common meaning. *See Levario v. Ysidro Villareal Labor Agency,* 120 N.M. 734, 736, 906 P.2d 266, 268 (Ct.App.1995). The purpose of Section 73-2-5 is to resolve disputes between parties with interests in a ditch, owners of the ditch land and owners of a ditch easement. An easement between private interests is expressly within its purview; there is nothing in the section drawing a distinction between public and private ditches.

33. NMSA 1978, Section 73-2-27 (1895) is not applicable to the case on appeal, as the Hanlens claim. That section, originally adopted in 1895, limits the application of certain statutory sections relating to ditches or acequias to community ditches which are not private and not incorporated, and are held and owned by more than two owners as tenants in common or joint tenants. The reference to "sections" in Section 73-2-27 to

which Section 73–2–27 applies relates to the original statutory sections adopted in 1895. These references to "sections" were inserted in Section 73–2–27 in the 1915 compilation for the words "this Act." *See* 1895 N.M.Laws, ch. 1, § 8; NMSA 1915, § 5756. As Section 73–2–5 was not originally enacted until 1933, the reference in Section 73–2–27 which limits the applicability of "these sections" and "subsections" does not apply to Section 73–2–5. *See* 1933 N.M.Laws, ch. 65, § 1.

## IV. *Issues Addressed Summarily*

34. The Hanlens raise several other issues on appeal which we address summarily. The Hanlens argue that the doctrine of estoppel applies to the conduct of James Cox because he knowingly permitted the Hanlens to build their fence from March 6, 1996, to March 10, 1996, when he knew that the Hanlens' fence violated the ditch easement and because James Cox made misrepresentations to Karen Hanlen by statement or omission which were relied upon by her. However, the Hanlens did not request any findings of fact with respect to this argument. A party who does not tender specific findings of fact waives review of the findings on appeal. *See Fenner v. Fenner,* 106 N.M. 36, 41, 738 P.2d 908, 913 (Ct.App.1987).

35. The brief in chief also asserts that the district court judgment is "in direct contradiction of the meaning of the simple words in" the Land Use Easement Act, NMSA 1978, Sections 47–12–1 to –6 (1991). That Act concerns the non-possessory interest in real property of a non-profit corporation, association, or trust for the purposes of retaining or protecting natural or open space; agricultural, forest, recreational or open space used; or natural resources or production uses of real property. *See* § 47–12–2. It is not relevant to this case. We also conclude that with the testimony of James Cox and Frank Holguin concerning the Hanlens' interference with the Cox family's ditch use, which by its nature is continuous, the district court acted appropriately in granting injunctive relief as an appropriate remedy to the extent it is consistent with this opinion. *See Kennedy,* 80 N.M. at 738, 460 P.2d at 813.

36. The Hanlens filed jury trial demands with respect to all issues raised in the complaint and counterclaims. They claim on appeal that they continue to have the right to a jury trial on their slander of title claim. We do not agree. In support of their slander of title counterclaim, the Hanlens allege that they have suffered damages "in the form of color of title making their real property less desirable in the marketplace" because of the claims of the Cox family to the use of the Hanlens' property.

37. The Cox family's claim for injunctive relief was tried by the district court without a jury as an equitable claim. *See* N.M. Const. art. II, § 12 ("The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."); *cf. Kaiser Steel Corp. v. W.S. Ranch Co.,* 81 N.M. 414, 422, 467 P.2d 986, 994 (1970) (injunction is equitable action). When the district court concluded that the Cox family was entitled to injunctive relief, it necessarily determined the underlying basis for the Hanlens' slander of title claim. The slander of title claim thus became moot without the need for a jury determination. *Cf. Carter v. City of Las Cruces,* 1996 NMCA 047, ¶¶ 8–10, 121 N.M. 580, 915 P.2d 336 (mootness).

## V. *Conclusion*

38. The use of the ditch for irrigation for five continuous years after 1964 created a conclusive presumption of a ditch easement under Section 73–2–5. The Hanlens' modifications to the ditch, reducing its width and installing a pipe fence on their property unreasonably interfered with the Cox family's maintenance of the ditch, which maintenance is reasonably necessary to the use of the ditch.

39. We affirm the judgment of the district court insofar as it requires the Hanlens to restore the width of the ditch to the fence line established in the David Tibbetts survey of May 8, 1995 and to remove their new pipe fence and not rebuild it farther north than the old fence line established in the David Tibbetts survey of May 8, 1995. We further affirm the judgment enjoining the Hanlens from making further modifications to the

ditch which unreasonably interfere with the Cox family's use, including maintenance, of the ditch. We reverse the judgment with respect to its requirement that the Hanlens remove the culverts and its restrictions upon further modifications to the ditch which do not unreasonably interfere with the Cox family's use, including maintenance, of the ditch. We remand to the district court to determine whether the culverts and the water gates unreasonably interfere with the Cox family's use or maintenance of the ditch. Each party shall bear its own costs, if any, on appeal.

40. **IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.