1999-NMCA-074

982 P.2d 503

**Paige PINNELL, Miriam White, and Valentine Valdez, Plaintiffs–Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS OF SANTA FE COUNTY, Defendants–Appellees.**

**No. 18,831.**

Court of Appeals of New Mexico.

May 5, 1999.

Steven Sugarman, Claybourne Clarke, Aztec, for Appellants.

Denice Brown Kulseth, Deputy County Attorney, Rosanna C. Vazquez, Assistant County Attorney, Santa Fe, for Appellees.

## OPINION

ARMIJO, Judge.

{1} This appeal presents a novel issue of federal constitutional law. Three Plaintiffs, each of whom resides in District Four of Santa Fe County, sought declaratory and permanent injunctive relief claiming a violation of their rights to equal protection as guaranteed by the Fourteenth Amendment of the United States Constitution. For its part, the Board, appellee in this action, claims that Plaintiffs' action was dismissed below for failure to join an indispensable party and is further barred as moot.

{2} For the reasons stated below, we conclude that Plaintiffs' claim was not dismissed on joinder grounds and is not moot. Applying a rational-basis review of the constitutional question presented, we affirm the decision of district court, dismissing Plaintiffs' complaint on its merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{3} The facts are not in dispute. The Board of County Commissioners of Santa Fe County (the Board) consists of five commissioners, each elected by and representing a single district. The Board elects a chairperson from one of the five commissioners. This position rotates each year.

{4} On July 9, 1997, the Board considered a proposal to grant four variances from the County's terrain management ordinance for the purposes of constructing a new 9.3-acre parking lot at the Santa Fe Ski Area. The new parking lot would serve customers at the ski basin, which is located in County Commission District Four. Before the question came to a vote, however, Commissioner Gonzales left the meeting. When the remaining commissioners did formally address the issue, they voted two-to-one to grant the variances to the Santa Fe Ski Company.

{5} Per the Resolution here at issue, Chairperson Anaya, in whose district Plaintiffs live, did not vote. As chair, he is only entitled to vote to break a tie cast by a quorum. After the other commissioners voted, however, Chairman Anaya "made it clear for the record" that he would have voted against granting the variances. Accordingly, had the chairperson been permitted to vote on this matter, the vote would have been two-to-two and the variances would not have been approved.

## A. THE PROCEEDINGS BELOW

{6} Plaintiffs filed their complaint on August 12, 1997, alleging, *inter alia*, a cause of action against the Board under 42 U.S.C. § 1983 (1994) for deprivation of their rights to equal protection. Their complaint sought to move the district court to declare unconstitutional both the Resolution and the Board's decision. It further sought to have the court "[r]emand the decision" for a new vote.

{7} Plaintiffs also filed a Motion for Temporary Restraining Order, asking the district court therein to enjoin implementation of the Board's July decision. The trial court heard the motion on August 13, 1997. After oral argument, the trial court denied the motion for Plaintiffs' failure to state a claim under 42 U.S.C. § 1983, namely, a violation of their equal protection rights. In so ruling, the trial court took judicial notice of the "rules of procedure of the Board ... grant[ ] to the Chairman certain authority that is not available to the other Commissioners."

## B. RESOLUTION No. 1996–17

{8} On February 13, 1996, the Board approved the Resolution here challenged. Among other provisions, the Resolution requires that the Board elect one of its five members as chairperson. Section III of the

Resolution further provides, in pertinent part:

C. *Vote.* The chairperson may only vote on any item in order to break a tie vote. In those meetings and only in those meetings in which the number of members that constitute a quorum equals three members, the chairperson has all rights as any other member for purposes of voting and making and seconding motions.

. . . .

E. *Duties.* The chairperson's duties include:

1. Opening meetings;
2. Announcing the business before the board and consideration of the agenda items;
3. Recognizing board members and speakers from the audience entitled to speak;
4. Allowing legitimate motions to proceed to a vote;
5. Allowing members of the board to speak on matters for consideration by the board;
6. Stating and putting to a (calling for the) vote all questions and motions properly made;
7. Announcing the results of all votes;
8. Preventing motions and testimony from becoming unduly delayed, disrespectful, frivolous, and unduly cumulative; and
9. Enforcing order and decorum at all times, and ensuring that members of the board and the public conduct themselves in a respectful and appropriate manner.

F. *Discussion.* The chairperson may take part in any discussion of any matter before the board.

G. *Motions.* The chairperson may not make motions or second any motions except as otherwise provided in Section III.C. of these Rules.

H. *Decorum.* The chairperson will assure that these rules are fully complied with at all board meetings.

{9} The Resolution further permits the chairperson to participate in the questioning of staff members on matters concerning recommended action and to cross-examine applicants who may be allowed to testify concerning a staff report or recommended action. This right to cross-examine also extends to those other witnesses who may be allowed to testify before the Board on matters of County business. In addition, the Resolution requires that the chairperson direct the manner in which testimony is received from members of the public in favor of or in opposition to an agenda item.

## II. DISCUSSION

### A. Failure to Join Indispensable Parties

{10} In its answer brief, the Board contends that the district court dismissed Plaintiffs' complaint below for failure to join an indispensable party, that is, the Santa Fe Ski Company. It therefore argues, in effect, that this Court should not reach the constitutional claim presented, but should affirm the dismissal on joinder grounds. *See In re Mary L.,* 108 N.M. 702, 705, 778 P.2d 449, 452 (Ct.App.1989) (observing that appellate courts will not reach constitutional questions unnecessarily). For several reasons, we reject the Board's argument.

■ {11} As a preliminary matter, we note that the Board fails to draw our attention to any entered finding or order in the record that supports its allegation of the trial court's grounds for dismissal. This alone is grounds to reject its argument. *See Beyale v. Arizona Pub. Serv. Co.,* 105 N.M. 112, 116, 729 P.2d 1366, 1370 (Ct.App.1986).

■ {12} We further note, however, that the Board never submitted a written answer to Plaintiffs' original complaint; nor did it respond in writing to Plaintiffs' motion for temporary injunctive relief. At trial, the Board orally raised the question as to whether Plaintiffs' complaint could be remedied without joining the Ski Company; however, the trial court never issued any formal ruling on this issue.

{13} The order in the record from which Plaintiffs appeal dismisses the action below on its merits: it makes no mention of the Plaintiffs' alleged failure to join the Ski Com-

pany. *See Rosen v. Lantis*, 1997–NMCA–033, ¶ 12, 123 N.M. 231, 938 P.2d 729 ("This court has no authority to supply those missing findings." (citing *Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988))). Moreover, the Board's own submitted draft of a stipulated order made no mention of dismissal for failure to join an indispensable party. *Cf. Cox v. Hanlen*, 1998–NMCA–015, ¶ 34, 124 N.M. 529, 953 P.2d 294 ("A party who does not tender specific findings of fact waives review of the findings on appeal."). We therefore conclude that the Board failed to pursue, and thus waived, this argument below.

{14} Furthermore, we decline in this instance to affirm on grounds not relied upon below. On appeal, this Court will not assume the role of the trial court and delve into such a fact-dependant inquiry as joinder. *See Sims v. Sims*, 1996–NMCA–078, ¶ 53, 122 N.M. 618, 930 P.2d 153 (noting that joinder is a more factual issue than legal); *State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) ("[O]rdinarily it is improper for this Court to engage in fact-finding; that is a trial-court function."). To do so without allowing Plaintiffs the opportunity to develop the record in response to the Board's factual allegations would work undue prejudice upon them. *See Eldin v. Farmers Alliance Mut. Ins. Co.*, 119 N.M. 370, 376, 890 P.2d 823, 829 (Ct.App.1994) ("[W]e will not affirm on a ground not relied upon by the trial court if it would be unfair to appellant to do so."). We find the prejudice especially apparent in this case as the Board never explicitly raised the issue below and subsequently waived the argument without a ruling. *Cf. Franks*, 119 N.M. at 177, 889 P.2d at 212 (noting prejudice in affirming trial court decision upon grounds to which appellant had nó opportunity to respond). Accordingly, we conclude that the trial court did not dismiss Plaintiffs' action on joinder grounds and refuse to base affirmance of the trial court upon such grounds.

**B. Mootness**

{15} On appeal, the Board further challenges Plaintiffs' claim as moot. In this regard, it asserts two factual grounds. First, it argues that Commissioner Anaya is no longer the chairperson and thus can now vote on all matters before the Commission. Second, as of the date of the trial court's ruling, the trees in the 9.3–acre tract at issue have been cut down and construction of the parking lot has begun. Accordingly, the Board argues, there is no live case or controversy. We are not persuaded.

{16} In addition to the injury alleged in the prohibition against Chairperson Anaya's voting on this matter and the clearing of the tract for paving, Plaintiffs' complaint further claims that the public is injured by the Resolution's continued operation. They argue that the Resolution's ongoing application to Board votes will necessarily lead to future constitutional violations, though involving different issues and parties, unless this Court intervenes. Indeed, the Resolution affects all persons with voting rights within Santa Fe County. As such, the constitutional issue presented is of " 'substantial public interest,' and 'capable of repetition, yet evading review.' " *Howell v. Heim*, 118 N.M. 500, 503, 882 P.2d 541, 544 (1994) (quoting *Mowrer v. Rusk*, 95 N.M. 48, 51, 618 P.2d 886, 889 (1980)). We therefore reject the Board's mootness argument.

**C. Plaintiffs' Constitutional Claim**

{17} The heart of Plaintiffs' claim is their allegation of an unconstitutional infringement on their right to vote. Specifically, they allege that the Resolution's conditional restriction of the chairperson's vote nullifies, as to formal county votes, the voice of an elected official. Specifically, Plaintiffs assert that the Resolution's operation in the matter of the ski basin parking extension denied their elected representative an effective voice and thus denied them equal protection of the law. We review such constitutional claims *de novo*, and upon this review, we affirm the decision of the district court.

{18} Plaintiffs have satisfied the first element of their equal protection challenge in that actions of a county government constitute state action; indeed, counties, as political subdivisions of a state, must comply with the Fourteenth Amendment. *See Avery v. Midland County*, 390 U.S. 474, 479–80, 88

S.Ct. 1114, 20 L.Ed.2d 45 (1968). Our next task is to determine the applicable level of constitutional scrutiny to apply in this case. When a statute is attacked on equal protection grounds, reviewing courts generally apply one of three possible analyses: (1) strict scrutiny, (2) intermediate scrutiny, or (3) rational-basis scrutiny. *See Trujillo v. City of Albuquerque*, 1998–NMSC–031, ¶ 14, 125 N.M. 721, 965 P.2d 305. We address each in turn.

### (1) STRICT SCRUTINY

{19} The strict-scrutiny standard of constitutional review involves the closest analysis and imposes the highest evidentiary burdens. Challenged legislation merits strict scrutiny if it affects the exercise of a fundamental right or discriminates against a suspect classification, "such as race, ancestry, and alienage." *Meyer v. Jones*, 106 N.M. 708, 711, 749 P.2d 93, 96 (1988). When a statute involving such rights or classifications is challenged, the burden is upon the defendant-government to demonstrate that the law is "necessary to serve a compelling interest." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979).

{20} Plaintiffs assert that strict scrutiny applies in the present case. In so arguing, they correctly assert that the right to vote is founded upon the principle of one person, one vote, without regard to place of residence within a state. *See Reynolds v. Sims*, 377 U.S. 533, 560–61, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). As such, "the Equal Protection Clause confers a substantive right to participate in elections on an equal basis with other qualified voters." *City of Mobile v. Bolden*, 446 U.S. 55, 77, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). Each person, therefore, should have "an equally effective voice" in the voting process regardless of residence. *Avery*, 390 U.S. at 480, 88 S.Ct. 1114. From this reasoning comes a series of United States Supreme Court cases applying strict-scrutiny review and invalidating voting regulations which "diluted" representation afforded a discrete class of constituents. *See, e.g., Avery*, 390 U.S. at 478–75, 88 S.Ct. 1114; *Reynolds*, 377 U.S. at 560–71, 84 S.Ct. 1362.

Plaintiffs argue these cases are applicable to the present appeal in that the Resolution wholly denies, not merely dilutes, the chairperson's district of a vote in Board decisions in all but the rare circumstance of a tie. We do not agree.

{21} Generally, a "vote dilution" scheme violates the equal protection clause only if it can be traced to a discriminatory purpose, typically a racially discriminatory purpose. *See, e.g., Rogers v. Lodge*, 458 U.S. 613, 617, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982); *Duncan v. Coffee County*, 69 F.3d 88, 94–95 & n. 4 (6th Cir.1995); *NAACP, Inc. v. Austin*, 857 F.Supp. 560, 578 (E.D.Mich.1994). Here, the Resolution lacks any obvious discriminatory purpose; moreover, none is even alleged. Indeed, when the Resolution passed, the Board could not have been able to identify which district would be represented by the chairman at any given time. Plaintiffs' reliance on "vote dilution" is therefore misplaced. Simply stated, the Resolution does not restrict access to the electoral process, nor does it "fall disproportionately on any discrete group of voters[.]" *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 12, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982). Accordingly, we are not persuaded by Plaintiffs' argument.

{22} Nonetheless, we are mindful that voting is a fundamental right and is "the essence of a democratic society[.]" *Reynolds*, 377 U.S. at 555, 84 S.Ct. 1362. As such, regulations limiting the right to vote are typically reviewed under the strict-scrutiny standard. *See, e.g., id.; see also City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665–67, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Avery*, 390 U.S. at 478–81, 88 S.Ct. 1114. However, this is not as broadly an applied rule as Plaintiffs assert.

{23} For example, in *Burdick v. Takushi*, 504 U.S. 428, 432–34, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992), the United States Supreme Court reviewed a challenge to an allegedly unconstitutional voting regulation under a mode of analysis that was less rigorous than strict scrutiny. In so doing, the Court

reasoned that the "rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Id.* at 434, 112 S.Ct. 2059. The Court further noted that "when a state election law provision imposes only 'reasonable, non-discriminatory restrictions' ... 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). This less-stringent analysis of voting regulations is consistent with substantial federal precedent. *See, e.g., Rodriguez,* 457 U.S. at 12, 102 S.Ct. 2194 (applying rational-basis scrutiny to review of law authorizing interim appointments to legislative offices); *Gill v. State of Rhode Island,* 933 F.Supp. 151, 159 (D.R.I.1996) (upholding as candidate eligibility regulation as a nondiscriminatory and reasonable restriction justified by legitimate state interest); *Greenwood v. Singel,* 823 F.Supp. 1207, 1211–12, 1216–17 (E.D.Pa.1993) (upholding as "facially neutral" law allowing legislative officer discretion to issue writ for special election to fill vacancy in house); *Nader v. Schaffer,* 417 F.Supp. 837, 848–49 (D.Conn.1976) (refusing to apply strict scrutiny to challenge of closed primary election procedure as it takes more to trigger strict scrutiny than "a minimal infringement on the rights to vote and of association").

{24} This Court has similarly declined to hold previously challenged voting regulations to strict scrutiny. For example, in *Montano v. Los Alamos County,* 1996–NMCA–108, ¶ 8, 122 N.M. 454, 926 P.2d 307 (quoting *Burdick,* 504 U.S. at 433–34, 112 S.Ct. 2059), this Court stated:

> [W]hile [i]t is beyond cavil that voting is of the most fundamental significance under our constitutional structure, not every voting regulation is subject to strict scrutiny. *It is only when those rights are subjected to severe restrictions,* that the regulation must be narrowly drawn to advance a state interest of compelling importance.

(Emphasis added and internal quotation marks omitted.)

{25} While Plaintiffs' argument that the Resolution infringes upon their voting rights has some merit, *cf. Reynolds,* 377 U.S. at 555, 84 S.Ct. 1362 ("And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."), they have demonstrated no " 'severe' restriction[ ]" upon their fundamental rights, *Montano,* 1996–NMCA–108, ¶ 8, 122 N.M. 454, 926 P.2d 307. That the Board's rule *relates* to Plaintiffs' rights to representation and voting does not equate to *infringing upon* such rights. *Cf. Lower Valley Water & Sanitation Dist. v. Public Serv. Co.,* 96 N.M. 532, 537, 632 P.2d 1170, 1175 (1981) (applying rational-basis review where alleged equal protection violations was "a step removed from the actual voting process").

{26} We note that limitations are indeed placed on the chairperson's actual exercise of a vote in the Board meetings. However, he or she is also granted broad and significant powers in shepherding all issues before the Board. Through the diligent exercise of such powers, a chairperson can well represent his or her district and participate in the legislative process. Moreover, the Resolution does not wholly prevent the chairperson from voting; for practical purposes, the rule dictates that the chair votes last. In instances where three votes have already been cast, either for or against a measure, the chair's vote is rendered irrelevant. In instances where the chair's vote would break a tie, it is determinative. This can hardly be construed as a " 'severe' restriction[ ]" upon Plaintiffs' rights such that this Court must apply strict scrutiny. *Cf. Burdick,* 504 U.S. at 433, 112 S.Ct. 2059, *quoted in Montano,* 1996–NMCA–108, ¶ 8, 122 N.M. 454, 926 P.2d 307. Accordingly, strict scrutiny is not appropriate in our review of Plaintiffs' appeal.

**(2) INTERMEDIATE SCRUTINY**

{27} Intermediate scrutiny requires the defendant-government to prove that the state action is substantially related to an important state interest. *See, e.g., Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d

1090 (1982). This level of analysis is more probing and requires higher evidentiary burdens than rational-basis scrutiny. Courts typically employ intermediate scrutiny to assess legislative classifications "infringing important but not fundamental rights, and involving sensitive but not suspect classes." *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988), *overruled on other grounds by Trujillo*, 1998–NMSC–031, ¶ 36, 125 N.M. 721, 965 P.2d 305. For example, classifications based on gender and illegitimacy traditionally have been measured under intermediate scrutiny. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). For reasons similar to those rendering strict scrutiny inapplicable, we conclude that intermediate-level scrutiny does not apply in the instant case.

{28} As our Supreme Court noted in *Trujillo*, application of the intermediate level of equal protection review turns on two elements: (1) an infringement " 'upon important but not fundamental rights' " (2) which affects " 'sensitive but not suspect classes.' " *Trujillo*, 1998–NMSC–031, ¶ 15, 125 N.M. 721, 965 P.2d 305 (quoting *Richardson*, 107 N.M. at 693, 763 P.2d at 1158). There is no evidence in the record before us that the "classification" alleged in this case burdens a "sensitive but not suspect class[ ]." Indeed, given the rotating nature of the chair, this rule has an equal impact on all county residents. Accordingly, this Court is unconvinced that the equal protection rights are affected so substantially that intermediate scrutiny is warranted.

### (3) RATIONAL–BASIS SCRUTINY

■ {29} Finally, rational-basis scrutiny represents the least stringent level of scrutiny. It requires that a statute's classification be rationally related to a legitimate governmental interest. *See, e.g., McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Unlike the other levels of scrutiny, the rational-basis standard requires that a plaintiff bear the burden of proof and that the state action bears a strong presumption of validity. *See F.C.C. v. Beach Communications, Inc.*,

508 U.S. 307, 314–15, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

{30} Upon our review of pertinent law and the facts in record, Plaintiffs have failed to demonstrate any basis upon which this Court can conclude that the appeal presented demands a heightened level of constitutional scrutiny. Indeed, as in *Burdick*, the rule here at issue "imposes only 'reasonable, nondiscriminatory restrictions[,]' " 504 U.S. at 434, 112 S.Ct. 2059 (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564), and as in *Montano*, Plaintiffs have demonstrated no " 'severe' restriction[ ]" on their right to vote, 1996–NMCA–108, ¶ 8, 122 N.M. 454, 926 P.2d 307. Accordingly, we conclude that rational-basis review is the applicable level of constitutional analysis in the present appeal.

■ {31} Under this mode of constitutional review, the Resolution enjoys a presumption of validity. *See Beach Communications, Inc.*, 508 U.S. at 314, 113 S.Ct. 2096. In effect, this Court will presume the validity of the Board's reasons for the Resolution's voting restrictions and defer to the Board's legislative judgment unless the legislature's reasons appear arbitrary or irrational. *See id.* at 314–15, 113 S.Ct. 2096. Plaintiffs fail to rebut this presumption.

{32} Moreover, the Board offers a rational purpose for the Resolution. It allows the business of county government to be conducted in an organized and efficient manner. This is a legitimate governmental purpose. Based on the powers of a chairperson, he or she generally controls the board meetings, calls for motions, cuts off discussions and debates, and has the authority to interpret any ambiguities or conflicts in the procedural rules in consultation with the county attorney, among other powers. The Board asserts that the resolution eliminated the chairman's right to vote to balance the other powers enjoyed solely by the chairman which, in turn, facilitates Board meetings.

{33} Therefore, based on the powers granted to and taken from the chairperson under the Resolution, we conclude that the

Resolution is reasonably related to a legitimate state interest.

## III. CONCLUSION

{34}  For the reasons stated above, we hold that the trial court did not dismiss Plaintiffs' action on joinder grounds and that the constitutional claim presented is not moot.  However, we further hold that the Resolution survives constitutional scrutiny under the rational-basis review.  Accordingly, we affirm the decision of the trial court dismissing Plaintiffs' complaint.

{35}  **IT IS SO ORDERED.**

ALARID and APODACA, JJ., concur.